UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20859-Civ-PAS

MID-CONTINENT CASUALTY COMPANY, a
foreign corporation,

            Plaintiff,

vs.

EASTERN CONSTRUCTION GROUP, INC., a
Florida corporation, EMILIO J. ALVAREZ and
MARTHA L. ALVAREZ, citizens of Florida, and
CHRISTOPHER BLANCO and CHRISTINE
BLANCO, citizens of Florida,

            Defendants.
_____/

### DEFENDANT BLANCO'S MEMORANDUM OF LAW IN OPPOSITION TO MID-CONTINENT CASUALTY COMPANY'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

Defendants, Christine and Christopher Blanco ("Blanco"), pursuant to S.D. Fla. Local Rule 7.1, file this Memorandum of Law in Opposition to Mid-Continent Casualty Company's ("the Insurance Company") Motion to Strike Affirmative Defenses, and state:

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

The Insurance Company has moved to strike Blanco's second, third, fourth, and sixth affirmative defenses, which are these:

    **2.**     **Plaintiff is estopped from bringing the Complaint against Defendants by the doctrine of estoppel due to its acts and omissions that have prejudiced the Defendants. Specifically, Plaintiff waited too long to bring the declaratory judgment action in good faith.**

    **3.**     **Plaintiff's claims are barred by the doctrine of unclean hands due to its unclean hands. Specifically, Plaintiff waited to long to bring the declaratory judgment action in good faith. The allegations of**

>    **Defendants' Complaint in the Underlying Actions specifically fall within covered terms of the subject insurance contract.**
>
> 4. **Plaintiff is barred from bringing the Complaint against Defendants by the doctrine of waiver. Specifically, Plaintiff waited too long to bring the declaratory judgment action in good faith. The allegations of Defendants' Complaint in the Underlying Actions specifically fall within covered terms of the subject insurance contract.**
>
> 6. **Plaintiff is barred from bringing the Complaint against Defendants by the doctrine of laches. Specifically, Plaintiff waited to long to bring the declaratory judgment action in good faith. The allegations of Defendants' Complaint in the Underlying Actions specifically fall within covered terms of the subject insurance contract.**

The Insurance Company hinges its argument on the assertion that Blanco failed to assert a factual basis for these defenses. The Insurance Company's argument fails because ***these particular affirmative defenses can be stated as a matter of law.*** Blanco contends that Plaintiff waited too long to bring this action, and that this fact constitutes the "defensive cause of action" (i.e., affirmative defense) of estoppel, unclean hands, waiver, and laches. The Insurance Company seems to believe that there is some kind of "minimum word" or "minimum sentence"—or some kind of length—requirement for a defendant to have properly plead an affirmative defense based on legal grounds. There is, of course, no such requirement. Just because Blanco's second, third, fourth, and sixth affirmative defenses are stated concisely and succinctly does not automatically render them as lacking sufficient factual allegations. The factual allegations are pled and the Court should deny the Insurance Company's motion.

## II. ARGUMENT AND ANALYSIS

Federal Rule of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, are not favored. *See Craig Funeral Home, Inc. v. State*

*Farm Mutual Automobile Ins. Co.*, 254 F.2d 569 (5th Cir. 1958). Further, as the court recognized in *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002):

> An affirmative defense will *only* be stricken, however, if the defense is "insufficient as a matter of law." A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is *patently frivolous*, or (2) it is *clearly invalid as a matter of law*. In evaluating a motion to strike, "the court must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings."

(emphasis added); *see also Anchor Hocking Corp. v. Jacksonville Electric Auth.*, 419 F. Supp. 992, 1000 (M.D. Fla. 1976) (same). The Court should deny the Insurance Company's motion because this standard is not met.

The Insurance Company cites *Romero v. Southern Waste Systems, LLC*, 619 F. Supp. 2d 1356 (S.D. Fla. 2009), for the proposition that Rule 8(a) requires the pleader to do more than make conclusory allegations. *See The Insurance Company's Motion at p.3*. Blanco does not disagree with this statement of hornbook law, **but Blanco's affirmative defenses at issue here are not mere conclusory allegations** and *Romero* is inapposite.

In *Romero*, the plaintiff sued for unpaid overtime compensation, declaratory relief, and other relief under the Fair Labor Standards Act ("FLSA"). The plaintiff worked as a dispatcher for the defendant. The plaintiff moves to strike several of the defendant's affirmative defenses. The court began its analysis by observing that Rule 12(f):

> … provides that "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." It is proper to strike a defense if it is insufficient as a matter of law. "A defense is insufficient as a matter of law if, on the face of the pleadings, it is *patently frivolous, or if it is clearly invalid* as a matter of law." *Morrison v. Executive Aircraft Refinishing, Inc.,* 434 F. Supp.2d 1314, 1318 (S.D.Fla.2005) (quoting *Anchor Hocking Corp. v. Jacksonville Electric Authority,* 419 F. Supp. 992, 1000 (M.D.Fla.1976)). Affirmative defenses are also subject to the general pleading

3

> standard of Fed.R.Civ.P. 8(a), which requires a "***short and plain statement***" of the asserted defense. *See Morrison,* 434 F.Supp.2d at 1318. While ***the rule does not require presentation of detailed facts***, it does require the party raising the affirmative defense to "do more than make conclusory allegations." *Id.* (quoting *Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681, 684 (M.D.Fla.2002)). Accordingly, despite liberal pleading requirements, where an affirmative defense is no more than "bare bones conclusory allegations, [it] must be stricken." *Morrison,* 434 F.Supp.2d at 1318. *See also Merrill Lynch Business Financial Services, Inc. v. Performance Machine Systems USA,* 2005 WL 975773, *11 (S.D.Fla.2005)(affirmative defenses are subject to the general pleading requirements of Rule 8(a) "and will be stricken if they failed to recite more than bare-bones conclusory allegations").

619 F. Supp. 2d at 1358 (emphasis added). Again, this is well established law with which Blanco does not disagree. Turning to its detailed analysis of the affirmative defenses at issue, the *Romero* court noted that the defendant's Third Affirmative Defense asserted that the plaintiff was exempt from overtime compensation pursuant to a statutory exemption. The plaintiff argued that this affirmative defense failed to allege any facts that would put the plaintiff on notice of the basis of the defendant's claim. *Id.* The statutory provision at issue encompassed the executive exemption, the administrative exemption, the outside sales exception, the learned professional exemption and the creative professional exemption. The *Romero* defendant ***agreed to amend*** his defense to state that the plaintiff was exempt pursuant to the executive and/or administrative exemption pursuant to the relevant statutory section.

The next affirmative defense at issue in *Romero* alleged that the defendant paid the plaintiff "all monies owed per the agreement between them." The plaintiff contended that this defense was a restatement of the defense of accord and satisfaction. The court concluded that this defense was not appropriate under the FLSA because an individual cannot waive entitlement to FLSA benefits. *Id.* (citing *Brooklyn Sav. Bank v. O'Neil,* 65 S. Ct. 895, 902 (1945)). During argument, the *Romero* defendant clarified that the agreement to which the affirmative defense

4

referred was the agreement that the plaintiff would be paid a salary. As a result, the Court "request[ed] that Defendant clarify this affirmative defense to make it clear that the 'agreement' to which it refers is merely the 'agreement' that Plaintiff would receive a salary." *Id.*

The next *Romero* affirmative defense at issue asserted that "Defendant is entitled to a credit/set-off for any compensation paid to Plaintiff to which he was not otherwise entitled to the extent such credits/set-off are permissible under the FLSA." The plaintiff claimed that this defense was "conclusory in that it fails to allege any facts in support of any sort of set-off." The court noted that certain set-off defenses are allowable under the FLSA, but that not all set-offs are permissible. As such, the court concluded that the affirmative defense at issue did not state what, if any, compensation the plaintiff received to which he was not otherwise entitled or the nature of this compensation. The court, therefore, struck the affirmative defense but granted express leave to amend. *Id.*

The next *Romero* affirmative defense at issue stated that "[t]he Complaint fails to state a claim against [Defendant] upon which attorneys' fees or costs can be awarded." The court observed that the FLSA provided that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" and struck this affirmative defense. *Id.*

The Insurance Company's reliance on *Romero* is misplaced because ***the affirmative defenses at issue in the instant case—and the law regarding them—bear no resemblance to the affirmative defenses that were stricken in* Romero.**

The Insurance Company's reliance on the Florida Supreme Court's decision in *Doe v. Allstate Ins. Co.*, 653 So. 2d 371, 373 (Fla. 1995) is also misplaced. Contrary to the Insurance Company's assertion, *Doe* simply does not hold that "Florida law unequivocally provides that

5

coverage is not created by waiver or estoppel." Nor does *Doe* hold that "Florida law prohibits the creation of coverage by waiver, estoppel, laches, or unclean hands." *Doe* simply does not include these broad holdings. In *Doe*, the Florida Supreme Court considered a question of Florida law certified by the U.S. Court of Appeals for the Eleventh Circuit:

> IF AN INSURANCE COMPANY ASSUMES DEFENSE OF AN ACTION WITH KNOWLEDGE OF FACTS WHICH WOULD HAVE PERMITTED IT TO DENY COVERAGE, IS IT ESTOPPED FROM SUBSEQUENTLY RAISING THE DEFENSE OF NON-COVERAGE? IN ESSENCE, DOES THE EXCEPTION TO THE RULE OF EQUITABLE ESTOPPEL SET FORTH BY THE COURT IN *CIGARETTE RACING TEAM V. PARLIAMENT INS. CO.,* 395 So.2d 1238 (Fla. 4th DCA 1981), STILL EXIST FOLLOWING *AIU INS. CO. V. BLOCK MARINA INV., INC.,* 544 So.2d 998 (Fla.1989)?

653 So. 2d at 372. Although the court answered the first question in the negative, it qualified its answer in the opinion, which is not helpful to the Insurance Company in the instant case.

The facts of *Doe* were that Allstate Insurance Company was the insurer of William and Peggy Lucas under a homeowner's policy. William Lucas pleaded guilty to sexual molestation of Charlene Doe, a minor child. Allstate was notified of Lucas's conviction in 1986. Two years later, Jane Doe filed a civil action against the Lucases on behalf of her daughter. Allstate defended the Lucases in that underlying state court action, but did not send a written reservation of rights to the Lucases regarding indemnification or coverage for liability as required by Florida law. *Id.* at 372-73.

In 1990, Allstate filed an action in federal court for declaratory relief to determine its liabilities, if any, under the homeowner's policy. A magistrate judge found that the policy in question did not afford coverage for Lucas's acts under either a theory of contract interpretation or equitable estoppel, and recommended that Allstate's motions for summary judgment be granted. That recommendation was adopted by the district court.

On appeal, Doe contended that summary judgment was improvidently granted and that Allstate was precluded from contesting coverage by virtue of equitable estoppel or waiver. *Id.* at 373. Allstate responded that the district court properly found that even if estoppel or waiver were to apply in this instance, Doe failed to demonstrate detrimental reliance or prejudice. *Id.* Doe contended that Allstate either waived its right to deny coverage or was estopped from doing so at that time because Allstate defended the Lucases without reserving its rights to challenge coverage; because it waited four years before contesting coverage; and because it impliedly acknowledged the existence of coverage in a letter to the Lucases. That letter stated that "the amount of damages claimed in the suit may be in excess of the protection afforded under your policy." Doe contended that this language constituted an express waiver of denial of coverage by virtue of its implied recognition of the existence of some coverage. *Id.*

Allstate argued that coverage for intentional criminal acts was explicitly excluded from the policy held by the Lucases, and that the statute expressly required the issuance of a written notice of reservation only when the insurer expected to raise a coverage defense for liability that would otherwise be covered by the policy.

Turning to its analysis of the law, the Florida Supreme Court observed that:

> For many years the law in Florida has been "well established that the doctrine of waiver and estoppel based upon the conduct or the action of the insurer (or an agent) is *not* applicable to matters of *coverage* as distinguished from grounds for *forfeiture.*" *Six L's Packing Co., Inc. v. Florida Farm Bureau Mut. Ins. Co.,* 268 So.2d 560, 563 (Fla. 4th DCA 1972) (citations omitted), *decision adopted by,* 276 So.2d 37 (Fla.1973). That is, "while an insurer may be estopped by its conduct from seeking a *forfeiture* of a policy, the insurer's *coverage* or restrictions on the *coverage* cannot be extended by the doctrine of waiver and estoppel." *Id.*
>
> In *Cigarette Racing Team, Inc. v. Parliament Insurance Co.,* 395 So.2d 1238 (Fla. 4th DCA 1981), a case involving facts similar to those in the instant case, the district court acknowledged this

7

> general rule but also ***recognized an exception to the rule "which provides that 'when an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage.'"*** *Id.* at 1239-40. ***Whether the exception to the rule applies depends upon whether the insurer's assuming the defense prejudiced the one claiming to be insured.***

*Id.* (emphasis added). The court then noted that the decision of the district court in *Cigarette Racing Team* comports with the doctrine of promissory estoppel enunciated in the Florida Supreme Court's decision in *Crown Life Insurance Co. v. McBride,* 517 So. 2d 660 (Fla. 1987). In carving out an exception to the general rule in that case, the Florida Supreme Court held that "***the form of equitable estoppel known as promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice.***" *Crown Life,* 517 So. 2d at 662 (emphasis added). It is this form of estoppel that is asserted by Blanco in the instant case, and the Court should deny the Insurance Company's motion.

The *Doe* court went on to note that:

> Additionally, the holding in *Cigarette Racing Team* properly takes into account ***the import of an insurer's obligation to defend within a policy of liability insurance.*** This obligation has long been recognized by this Court. *See Auto Mut. Indem. Co. v. Shaw,* 134 Fla. 815, 184 So. 852 (1938). In fulfilling its promissory obligation to defend, the insurer employs counsel for the insured, performs the pretrial investigation, and controls the insured's defense after a suit is filed on a claim. The insurer also makes decisions as to when and when not to offer or accept settlement of the claim. In *Shuster v. South Broward Hospital District Physicians' Professional Liability Insurance Trust,* 591 So.2d 174 (Fla.1992), we stated that "the 'insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.'" *Id.* at 176. This obligation amounts to ***a fiduciary duty requiring the exercise of good faith.*** *Florida Farm Bureau Mut. Ins. Co. v. Rice,* 393 So.2d 552 (Fla. 1st DCA 1980), *review denied,* 399 So.2d 1142 (Fla.1981). The insured has the reciprocal obligation to allow the

8

> insurer to control the defense and to cooperate with the insurer. *American Fire & Casualty Co. v. Collura,* 163 So.2d 784 (Fla. 2d DCA), *cert. denied,* 171 So.2d 389 (Fla.1964).

*Id.* at 373-74 (emphasis added).  The importance of this law, according to the Florida Supreme Court, is that:

> when the insurer undertakes the defense of a claim on behalf of one claiming to be an insured, we have recognized substantial duties on the part of both the insurer and the insured. ***If an insurer erroneously begins to carry out these duties, and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage which it earlier acknowledged.*** However, we clearly state that ***the insured must demonstrate*** that the insurer's assumption of the insured's defense has ***prejudiced*** the insured. ***It is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation*** of the insurance policy.

*Id.* at 374 (emphasis added).  Blanco can demonstrate the requisite prejudice in the instant case. Were it not for the extreme nearly two-year delay by the Insurance Company in filing this action, Blanco might have handled his Chinese-Drywall situation much differently, such as by retaining special counsel to advise him on insurance coverage issues or separate counsel to consider various other legal options, including a short sale of the home or a proposed loan modification with his lender.  Blanco was prejudiced by spending nearly two years assuming the Insurance Company would provide coverage.  After all, the damages at issue in the underlying litigation— toxic fumes emanating into Blanco's home from defective wallboard manufactured in China that emits sulfur-based toxins when exposed to heat and humidity—are clearly covered by the insurance policy at issue.  If the insurance policy does not cover Blanco's damages here, then what does it cover?

The *Doe* court further held that the exception to the rule of equitable estoppel set forth in the *Cigarette Racing Team* decision continued to exist following the court's decision in *AIU*

*Insurance Co. v. Block Marina Investment, Inc.,* 544 So. 2d 998 (Fla.1989), and the court approved the application of the exception on the basis discussed. As the court noted:

> *AIU* only addresses whether noncompliance with the notice requirements of section 627.426(2), Florida Statutes (1985), precludes an insurer from denying coverage which is excluded under a comprehensive liability policy. We concluded that an insurer's failure to comply with the requirements of section 627.426 will not preclude an insurer from disclaiming liability where the policy has expired or the coverage sought is excluded by the policy. *AIU* simply recognizes that section 627.426 does not create or extend nonexistent coverage.

In summary, the two principal cases on which the Insurance Company relies in the instant case are inapposite. We now discuss each affirmative defense at issue in turn.

### A. Blanco's Second and Fourth Affirmative Defenses (Estoppel and Waiver) Satisfy Rule 8 and Should Not be Stricken.

The general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage. *See Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 661 (Fla. 1987); *Six L's Packing Co. v. Florida Farm Bureau Mutual Insurance Co.,* 268 So.2d 560 (Fla. 4th DCA 1972), *cert. discharged,* 276 So.2d 37 (Fla.1973). "[E]quitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss. In other words, it will not avail in offense, but only ***in defense***." *Id.; Kerivan v. Fogal,* 22 So.2d 584, 586 (1945) (emphasis added). An exception to the general rule is the doctrine of promissory estoppel, a qualified ***form of equitable estoppel*** that applies to representations relating to a future act of the promisor rather than to an existing fact. *Id.* at 661-61. *Southeastern Sales & Service Co. v. T.T. Watson, Inc.,* 172 So. 2d 239 (Fla. 2d DCA 1965). In *South Investment Corp. v. Norton,* 57 So. 2d 1 (Fla. 1952), the Florida Supreme Court noted that:

10

> The authorities recognize and apply the doctrine of promissory estoppel when the promise or representation relates to the abandonment of existing rights; but, ordinarily, a truthful statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built.

*Id.* at 3 (citations omitted). In *Mount Sinai Hospital, Inc. v. Jordan,* 290 So. 2d 484 (Fla.1974), however, the court found promissory estoppel applicable to a charitable pledge, recognizing that although "[a] mere gratuitous promise of a future gift, lacking consideration, is simply unenforceable as a nudum pactum. When the gratuitous promise is coupled with an ***inducement*** for others to subscribe, the promise is no longer void on its face." *Id.* at 486 (emphasis added). The doctrine applies where to refuse to enforce a promise "would be virtually to sanction the perpetration of fraud or would result in other ***injustice***." *Southeastern Sales,* 172 So. 2d at 241, (quoting 19 Am. Jur. *Estoppel* § 53 (1939) (emphasis added)). Such injustice may be found where the promisor reasonably should have expected that his affirmative representations would ***induce*** the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his ***detriment***. *See Mount Sinai Hospital.* This describes the instant case: Blanco detrimentally relied on the Insurance Company's implied representation that there was coverage by delaying in bringing any action to deny coverage. At the very least, at this stage of the litigation, the Court should allow the affirmative defenses to stand. Factual determination as to whether Blanco will prevail on the affirmative defenses remains for a later date in this litigation.

> The Florida Supreme Court in *Crown Life* concluded:
>
>> ***We see no reason why this equitable doctrine should not also apply to insurance contracts.*** We note that several of the district courts have, in effect, found the concept applicable, albeit in the guise of equitable estoppel and/or oral contract. *Kramer; Wade; Burns v. Consolidated American Insurance Co.,* 359 So.2d 1203 (Fla. 3d DCA 1978); *General Motors Acceptance Corp. v.*

11

> *American Liberty Insurance Co.,* 238 So.2d 450 (Fla. 1st DCA 1970). We also note that, while our holding represents a minority view throughout the nation, a number of courts have adopted this position in recent years. *See, e.g., Travelers Indemnity Co. v. Holman,* 330 F.2d 142 (5th Cir.1964); *United Pacific Insurance Co. v. Meyer,* 305 F.2d 107 (9th Cir.1962); *Ivey v. United National Indemnity Co.,* 259 F.2d 205 (9th Cir.1958); *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984); *Lewis v. Continental Life & Accident Co.,* 93 Idaho 348, 461 P.2d 243, (1969); *Harr v. Allstate Insurance Co.,* 54 N.J. 287, 255 A.2d 208 (1969); *Martinez v. John Hancock Mutual Life Insurance Co.,* 145 N.J.Super. 301, 367 A.2d 904 (1976); *Security Insurance Co. v. Greer,* 437 P.2d 243 (Okla.1968); *Allstate Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 67 Or.App. 623, 679 P.2d 879 (1984); *Crescent Company of Spartanburg, Inc. v. Insurance Company of North America,* 266 S.C. 598, 225 S.E.2d 656 (1976). Accordingly, we answer the certified question in the affirmative to this limited extent, finding that ***the form of equitable estoppel known as promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice.***

*Crown Life*, 517 So. 2d at 662 (emphasis added).

In *Lloyds Underwriters v. Keystone Equipment Finance Corp.*, 25 So. 3d 89 (Fla. 4th DCA 2009), Lloyds argued that it could not be estopped from relying upon a garaging warranty to deny a claim as a consequence of any failure to comply with sections 627.421 and 626.922, Florida Statutes, because Florida law expressly provides that the doctrine of estoppel and waiver may not be applied to create or extend insurance coverage. The trial court, however, granted summary judgment in favor of the ***insured*** and the appellate court affirmed, holding that "as a matter of law, the insurer was estopped from resorting to the garaging warranty to deny the claim." 25 So. 3d at 92. In its analysis, the court observed:

> On appeal, Lloyds argues that, regardless of any failure to comply with sections 627.421 and 626.922, or the failure to provide the insured with the binder, the policy or other notice of the garaging warranty prior to the loss, the summary judgment was entered in error because Florida law holds that the doctrines of estoppel and

12

> waiver cannot be applied to create or extend insurance coverage. For purposes of application of the doctrines of estoppel and waiver, Florida law draws a distinction between provisions of forfeiture and provisions of coverage. Thus, "while an insurer may be estopped by its conduct from seeking a Forfeiture of a policy, the insurer's Coverage or restrictions on the Coverage cannot be extended by the doctrine of waiver and estoppel." *Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co.,* 268 So.2d 560, 563 (Fla. 4th DCA 1972), *aff'd,* 276 So.2d 37 (Fla.1973); *see also AIU Ins. Co. v. Block Marina Inv., Inc.,* 544 So.2d 998, 1000 (Fla.1989); *Cummins v. Allstate Indem. Co.,* 732 So.2d 380, 382 (Fla. 4th DCA 1999). ***The rationale behind the rule is that " 'the company should not be required by waiver and estoppel to pay a loss for which it charged no premium.' "*** *Unijax, Inc. v. Factory Ins. Ass'n,* 328 So.2d 448, 455 (Fla. 1st DCA 1976) (quoting W.C. Crais, III, *Comment Note: Doctrine of estoppel or waiver as available to bring within coverage of insurance policy risks not covered by its terms or expressly excluded therefrom,* 1 A.L.R.3d 1139, 1144 (1965)).

25 So. 3d at 91 (emphasis added). The Insurance Company charged a substantial premium for providing the coverage at issue here. The cases cited by the Insurance Company in support of the drastic remedy of striking Blanco's affirmative defenses at this stage of the litigation are inapposite.

  **B. Blanco's Third Affirmative Defense (Unclean Hands) Satisfies Rule 8 and Should Not be Stricken.**

The doctrine of unclean hands requires "that no one shall be permitted to profit from his own fraud or wrongdoing, and that one who seeks the aid of equity must do so with clean hands." *Yost v. Rieve Enters., Inc.,* 461 So.2d 178, 184 (Fla. 1st DCA 1984); *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1043 n.3 (Fla. 2d DCA 2007).

The essential elements of a fraudulent representation upon which relief can be granted under the unclean hands doctrine are "(1) a false statement of fact by the defendant, (2) knowledge by the defendant that the statement was false at the time it was made, (3) intent that the statement induce another to act in reliance thereon, and (4) actual reliance on the statement

13

resulting in damage to the plaintiff." *Id.*; *see also Held v. Trafford Realty Company,* 414 So. 2d 631 (Fla. 5th DCA 1982). Misrepresentation of material facts, ***even though innocently made***, acted upon by the other party to his ***detriment***, will constitute a sufficient ground for ***rescission and cancellation in equity***.

The proper inquiry is not whether the party making the representation knew it to be false, but whether the ***other party believed it to be true and was misled by it in entering into the contract***, so that whether the misrepresentation was innocently or knowingly made, the legal effect is the same. *See id.*; *Langley v. Irons Land & Development Co.,* 114 So. 769 (1927); *Held* at 632-33; *Lynch v. Fanning,* 440 So. 2d 79, 80 (Fla. 1st DCA 1983). When Blanco agreed to pay the Insurance Company thousands of dollars in insurance premiums as consideration for insuring his home, he believed and was misled into believing that the Insurance Company would honor the contract and provide insurance when the time came that it was needed. Toxic fumes from defective Chinese-manufactured drywall have rendered Blanco's home unlivable, yet the Insurance Company has—belatedly—waited for the precedents in analogous cases to evolve to bring this declaratory judgment action. Such delay is not fair. At the very least, the Insurance Company should have to choose between prevailing in its quest to argue that there was no insurance coverage and ***returning the Blanco's insurance premium payments and cancelling the contract.***

      **C.**      **Blanco's Sixth Affirmative Defense (Laches) Satisfies Rule 8 and Should Not Be Stricken.**

Courts should not protect parties who are directly responsible for delays in filing arising out of their own willful acts. The doctrine of laches is the vehicle by which equity will follow the law and apply the statute of limitations. However, equity will not rigidly follow the statute of limitations where the equities are unequal. While it is well established that mere lapse of time

does not in itself constitute laches, "[i]t is also clear that the applicability of the doctrine of laches depends upon the facts of the particular case." *Wiggins v. Lykes Bros.*, 97 So. 2d 273, 275 (Fla. 1957). It is inequitable to enforce a claim that the plaintiff has permitted to "moulder for so long a time." *See id.*

The elements of laches are set out in *Van Meter v. Kelsey*, 91 So. 2d 327 (1956): (1) there must be conduct by the defendant, or one under whom the defendant claims, giving rise to the situation of which complaint is made; (2) the plaintiff, having had knowledge or notice of the defendant's conduct, and having been afforded the opportunity to institute suit, is guilty of not asserting his rights by suit; (3) the lack of knowledge on the part of the defendant that the plaintiff will assert the right on which plaintiff bases his suit. *See Tower v. Moskowitz*, 262 So. 2d 276, 279-80 (Fla. 3d DCA 1972). Blanco satisfies this test here and the Court should deny the Insurance Company's motion to strike.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Insurance Company's motion to strike Blanco's affirmative defenses.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

                                 s/ Victor M. Diaz, Jr.
                                 Victor M. Diaz, Jr.
                                 Florida Bar No. 503800
                                 Podhurst Orseck, P.A.
                                 25 W. Flagler St., Suite 800
                                 Miami, FL 33130
                                 Tel:  305.358.2800
                                 Fax 305.358.2382
                                 vdiaz@podhurst.com

## Service List

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Pedro E. Hernandez
Florida Bar No. 30365
phernandez@hinshawlaw.com
9155 S. Dadeland Boulevard
Suite 1600
Miami, FL 33156-7747
Telephone: (305) 358-7747
Facsimile: (305) 577-1063
*Counsel for Mid-Continent Casualty Company*

James S. Lupino, Esq.
Florida Bar No. 244481
jlupino@tropicalaw.com
Hershoff, Lupino & Yagel
90130 Old Highway
Tavernier, FL 33070
Telephone: (305) 852-8440
Facsimile: (305) 852-8848
*Attorneys for Eastern Construction Group, Inc.*